UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:13-cr-00029-JAW-3 |
| | ) | 2:13-cr-00072-JAW-1 |
| VICTOR ENRIQUE DIAZ | ) | |
| | ) | |

**ORDER ON MOTIONS TO REDUCE SENTENCE**

The court dismisses without prejudice a defendant's motions to reduce sentence under Amendment 821 of the United States Sentencing Guidelines because he does not qualify for a reduction.

I.  **BACKGROUND**

   A.  **The Drug Trafficking Conspiracy Charge: 2:13-cr-00029-JAW-3**

On February 12, 2013, Victor Enrique Diaz was indicted as Jose Alverez, a/k/a Victorino, along with nine co-defendants by a federal grand jury for engaging in a conspiracy to distribute one kilogram or more of heroin. *Indictment* (ECF No. 22). On April 24, 2013, a federal grand jury issued a superseding indictment replacing Mr. Diaz's name for Jose Alvarez as well as several other aliases. *Superseding Indictment* (ECF No. 156). On October 11, 2013, a superseding information was filed, charging Mr. Diaz as the sole defendant in a single count of conspiracy to distribute 100 grams or more of a mixture or substance containing heroin, a violation of 21 U.S.C. § 841(a)(1). *Superseding Information* (ECF No. 362). On October 11, 2013, Mr. Diaz appeared before Judge George Z. Singal, waived indictment, and pleaded guilty to Count I of the Superseding Information. *Min. Entry* (ECF No. 364).

### B. The Reentry After Deportation Charge: 1:13-cr-00072-JAW-1

On April 11, 2013, a federal grand jury issued a separate indictment against Victor Enrique Diaz, alleging that he violated federal criminal law by reentering the United States after being deported. *Indictment* (ECF No. 1). On October 11, 2013, Mr. Diaz appeared before Judge Singal and pleaded guilty to the illegal reentry charge. *Min. Entry* (ECF No. 34).

### C. The January 29, 2014 Sentencing

On January 29, 2014, Judge Singal imposed a sentence of 188 months of concurrent incarceration on the drug trafficking conspiracy and illegal reentry charges, four years of supervised release on the drug trafficking charge, no fine, and a $100 special assessment on each charge. *Min. Entry*, 2:13-cr-00029-JAW-3 (ECF No. 532), *J.* (ECF No. 534), *Am. J.* (ECF No. 544); *Min. Entry*, 2:13-cr-00072-JAW-1 (ECF No. 43), *J.* (ECF No. 45), *Am. J.* (ECF No. 50). On January 31, 2014, Mr. Diaz appealed both convictions and his sentences. *Notice of Appeal*, 2:13-cr-00029-JAW-3 (ECF No. 540), 2:13-cr-00072-JAW-1 (ECF No. 47). On November 17, 2014, the Court of Appeals for the First Circuit affirmed the judgments in both cases. *J. of Ct. of Appeals for the First Circuit*, 2:13-cr-00029-JAW-3 (ECF No. 754), 2:13-cr-00072-JAW-1 (ECF No. 59).

### D. Victor Diaz's Amendment 821 Motions

On February 13, 2024, Mr. Diaz filed a pro se motion for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 821 of the United States Sentencing Commission Guidelines in both his criminal cases. *Def.'s Mot. Pursuant*

*to 18 U.S.C. § 3582(c)(2) Based on the New Sentencing Guideline Downward Adjustment for Certain Status-Points Offenders (Am. 821 U.S.S.G.)*, 2:13-cr-00029-JAW-3 (ECF No. 959), 2:13-cr-00072-JAW-1 (ECF No. 63) (*Def.'s Mots.*). Mr. Diaz's motion includes a request that counsel be appointed to represent him. *Id.* On the same day, Mr. Diaz filed a letter addressed to Judge Singal in support of his motion but only in the drug trafficking case. *Letter from Victor Diaz to The Hon. George Z. Singal* (Jan. 29, 2024), 2:13-cr-00029-JAW-3 (ECF No. 960).

In his motion, Mr. Diaz asserts that the original calculation of his guideline range was a total offense level of 31 and a criminal history category of V, which resulted in a guideline range of 168 to 210 months. *Def.'s Mots.* at 2. In his motion, Mr. Diaz claims that he is entitled to a one-point reduction in his total offense level under Amendment 821 for a so-called status point, resulting in a new total offense level of 30, a criminal history category of V, and a resulting new guideline range of 151 to 188 months. *Id.* at 3.

E. The United States Probation Office 821 Reduction Reports

On February 14 and 15, 2024, respectively, the United States Probation Office (PO) filed identical 821 reduction reports. *Report Pursuant to Am. 821 to the United States Sentencing Guidelines for <u>Ineligible</u> Def.*, 2:13-cr-00029-JAW-3 (ECF No. 962), 2:13-cr-00072-JAW-1 (ECF No. 64) (*PO Ineligible Reports*). In its reports, the PO concluded that Mr. Diaz was not entitled to a sentence reduction under Amendment 821 because he did not receive any status points at his original sentencing and he had nine criminal history points, making him ineligible for reduction under

3

Amendment 821. *Id.* at 3. The PO also analyzed whether Mr. Diaz would benefit from the combination of Amendment 821 and 782, and it concluded that, although the combination would reduce Mr. Diaz's base offense level from 30 to 28, because he was designated a career offender, his total offense level would remain unchanged. *Id.*

## II.  DISCUSSION

The Court is issuing this brief order to explain to Mr. Diaz why the Court is not reducing his sentence and not granting his request for appointed counsel.

### A.  The Presentence Investigation Report Guideline Calculations

Prior to sentencing, the PO prepared a Presentence Investigation Report in Mr. Diaz's case. *PO Ineligible Reports*, Attach. 1, *Revised Presentence Investigation Report* (*PSR*). The PO first calculated Mr. Diaz's total offense level. *Id.* ¶¶ 17-36. Given the drug quantity, the PO established a base offense level and adjusted offense level (subtotal) of 28 for the drug trafficking offense. *Id.* ¶¶ 17, 28.

The PO then applied the same calculations to the illegal reentry conviction. *Id.* ¶¶ 23-28. It began with a base offense level of 8, *id.* ¶ 23, and increased the base offense level by 16 levels pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(i) because Mr. Diaz reentered the United States after having been convicted of two prior drug trafficking offenses for which the sentence imposed was greater than thirteen months and for which criminal history points were applied under Chapter 4. *Id.* ¶ 24. This resulted in an adjusted offense level of 24. *Id.* ¶ 28.

The PO then applied the multiple count adjustment under U.S.S.G. § 3D1.4, which increased the total offense level two points, and added these additional points

4

to 28, the higher of the two adjusted offense levels, resulting in a combined adjusted offense level of 30. *Id.* ¶¶ 29-32.

However, the PO further determined that Mr. Diaz qualified as a career criminal under U.S.S.G. § 4B1.1(b). *Id.* ¶ 33. This had the effect of increasing his offense level from 30 to 34. *Id.* Mr. Diaz was accorded a three-level reduction for acceptance of responsibility and a resulting total offense level of 31. *Id.* ¶¶ 33-36.

The PO then addressed Mr. Diaz's criminal history category. It calculated his criminal history score as 9, based on two prior drug trafficking convictions and an illegal reentry conviction. *Id.* ¶¶ 37-42. This would have resulted in a criminal history category of IV, but for his career criminal designation. *Id.* ¶ 42. As a career criminal, Mr. Diaz's criminal history was automatically increased to category VI under U.S.S.G. § 4B1.1(b). *Id.* ¶ 43.

Based on a total offense level of 31 and a criminal history category VI, Mr. Diaz faced a guideline sentence range of 188 to 235 months of incarceration. *Id.* ¶ 65.

B.  **Judge Singal's Guideline Calculations**

At Mr. Diaz's January 29, 2014 sentencing hearing, Judge Singal made the guideline calculations and generally echoed the PO's calculations in the PSR. He made one change, finding that the base offense level for the drug trafficking count was 30, not 28. *Tr. of Proceedings*, 37:1-2 (ECF No. 650). He determined that his total offense level was 31 and his criminal history category VI, resulting in a guideline sentence of 188 to 235 months, four to five years of supervised release, a fine from $15,000 to $5,000,000, and a $100 special assessment per count for a total of $200.

*Statement of Reasons*, Attach. 1, *Findings Affecting Sentencing* 2:13-cr-00029-JAW-3, (ECF No. 535), 2:13-cr-00072-JAW-1 (ECF No. 46).

## C.     The Career Criminal Designation

Unfortunately, Mr. Diaz qualified as a career criminal under U.S.S.G. § 4B1.1 and that career criminal designation drove the guideline calculation. Mr. Diaz's career criminal status affected Mr. Diaz's guideline sentence in two ways. First, it increased his adjusted offense level from 31 to 34, and second, it increased his criminal history category from IV to VI. U.S.S.G. § 4B1.1(b) ("[a] career offender's criminal history category in every case under this subsection shall be Category VI"). In his motion, Mr. Diaz does not mention his career criminal status and has not challenged it.

## D.     Amendment 821 Reduction

Effective November 1, 2023, the United States Sentencing Commission adopted Amendment 821 to the guidelines and made the changes retroactive. First, the Commission eliminated U.S.S.G. § 4A1.1(d), which had increased a defendant's criminal history score by two points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status. Next, the Commission inserted a new section, § 4A1.1(e), which increased the criminal history score by one point if the defendant received seven or more criminal history points and committed the offense while under a criminal justice sentence. *See United States v. Burgos-Balbuena*, No. 22-1660, 2024 U.S. App. LEXIS 21382, at *16 n.8 (1st Cir. Aug. 23,

6

2024) ("[t]he Guidelines now call for only one point in [cases where the defendant committed the instant offense while under supervised release], and only if the defendant's criminal history points otherwise add up to seven or more"). These enhancements under either the old or new version of § 4A1.1 are known as "status points" and for defendants who received a two-level status point increase in their original calculation, they might be subject to a reduction in criminal history calculation since the Commission made Amendment 821 retroactive.

### E. Amendment 821 and Victor Diaz

As just explained, Amendment 821 does not apply to Mr. Diaz's situation. Mr. Diaz did not receive a two-level increase in his criminal history score under U.S.S.G. § 4A1.1(d) when he was sentenced on January 29, 2014, and therefore, he is not entitled to a status point reduction under the newly added U.S.S.G. § 4A1.1(e). More to the point, he received a criminal history category of VI once designated as a career criminal. *See Razo v. United States*, No. 1:11-cr-00184-JAW-1, 2023 U.S. Dist. LEXIS 229016, at *4 (D. Me. Dec. 26, 2023) ("Under [U.S.S.G. § 4B1.1(b)], the Court was required to increase [the Defendant's] criminal history category to VI regardless of his overall criminal history score"); *United States v. Hamilton*, No. 11-10133-FDS, 2023 U.S. Dist. LEXIS 228327, at *1-2 (D. Mass. Dec. 22, 2023) ("[Defendant's] career offender status automatically placed him in criminal history category VI, regardless of any status points received in the parallel criminal history points calculation. Therefore, the amended guidelines concerning status points would not have affected

7

the calculation of his sentence") (internal citations omitted). Therefore, Amendment 821 does not afford any relief to Mr. Diaz.

Under U.S.S.G. § 1B1.10, Reduction in Term of Imprisonment as a Result of Amended Guideline Range (Policy Statement), a court is not authorized to reduce a defendant's term of incarceration if the amendment "does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2)(B). As Amendment 821 does not have the effect of reducing Mr. Diaz's sentencing guideline range, the Court may not reduce his sentence pursuant to Amendment 821.

F.    **Amendment 782 and Victor Diaz**

Although Mr. Diaz did not raise Amendment 782 in his motion, the Court will address it because the PO analyzed whether it afforded Mr. Diaz any relief and concluded it did not. On April 30, 2014, the United States Sentencing Commission submitted Amendment 782 to Congress, which had the effect of reducing the offense levels based on drug quantity; this amendment became effective on November 1, 2014. *See U.S. Sentencing Comm'n, Guidelines Manual*, App. C Supp., Amend. 782 (reduction). For the most part, Amendment 782 reduced the base offense level for drug offenses by two levels. *See U.S. Sentencing Comm'n, Am. 782, Reason for Am.* (Effective Nov. 1, 2014) ("[o]ffense levels for quantities above and below the mandatory minimum threshold quantities similarly are adjusted downward two levels"); *see also United States v. Rodríguez-Rosado*, 909 F.3d 472, 475 (1st Cir. 2018) ("[Amendment 782], which applies retroactively, reduced by two levels the base offense level for most drug offenses"). Furthermore, the United States Sentencing

8

Commission applied Amendment 782 retroactively to sentences already imposed. *See U.S. Sentencing Comm'n, Guidelines Manual*, App. C Supp., Amend. 788 (retroactivity); *United States v. Vaughn*, 806 F.3d 640, 643 (1st Cir. 2015) ("Amendment 788 amended § 1B1.10 to authorize district courts to apply Amendment 782 retroactively").

As the PO noted, Amendment 782, applied retroactively, would have the effect of lowering Mr. Diaz's base offense level from 30 to 28. Unfortunately for Mr. Diaz, however, as the Court noted earlier, his guideline range was driven by his career offender status. Even assuming the total offense level would have been lower before application of the career offender provision, once that provision was deemed applicable to Mr. Diaz, the guideline calculations would have been the same because the career offender calculations trumped the other calculations. *See United States v. Barr,* No. 15-2216, 2017 U.S. App. LEXIS 20513, at *2 (1st Cir. Sep. 15, 2017) ("[Defendant's] original range is his career-offender range--a range that was unaffected by Amendment 782") (citing U.S.S.G. § 4B1.1(a), (b)); *United States v. Worthy,* No. 2:12-cr-00135-JAW, 2023 U.S. Dist. LEXIS 169928 at *5 (D. Me. Sep. 25, 2023) (denying a motion for sentence reduction because "[g]iven his career offender status (criminal history score of VI), the sentencing range for [the Defendant], despite a two-level reduction overall, would still be [the same]"). The Court rejects Mr. Diaz's request for appointment of counsel because the result the Court has reached on this motion is clearly mandated by law and by the guidelines, such that defense counsel could not affect the Court's ruling.

## III.  CONCLUSION

The Court DISMISSES without prejudice Defendant's Motion Pursuant to 18 U.S.C. § 3582(c)(2) Based on the New Sentencing Guideline Downward Adjustment for Certain Status Point Offenders (Am. 821 U.S.S.G.) and his request for appointment of counsel, 2:13-cr-00029-JAW-3, (ECF No. 959), 2:13-cr-00072-JAW-1 (ECF No. 63).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 5th day of September, 2024.